# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jul 05 2012, 9:09 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRENDA STUTZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.   49A02-1110-CR-960 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara A. Collins, Judge
The Honorable Deborah J. Shook, Master Commissioner
Cause No.  49F08-1102-CM-12062

**July 5, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Brenda Stutz appeals her conviction following a bench trial for operating a vehicle with a blood-alcohol content ("BAC") of at least .15 percent, a class A misdemeanor.[1]

We affirm and remand with instructions.

## ISSUE

Whether the trial court improperly entered a judgment of conviction for operating a vehicle with a blood-alcohol content of at least .15 percent.

## FACTS

During the afternoon of February 21, 2011, Kenneth Blake was sitting in the waiting room of the Foot and Ankle Institute in Indianapolis when he noticed Stutz. Stutz caught his attention because "she seemed a little loud in talking to somebody . . . ." (Tr. 6). At one point, Blake heard Stutz excuse herself to make some phone calls "and then when she came back and passed by [him]," he smelled the odor of alcohol emanating from Stutz. (Tr. 6). Although Blake saw the vehicle in which Stutz had arrived at the doctor's office, he did not observe her driving. Blake telephoned 911 and reported Stutz as a possibly impaired driver.

Shortly thereafter, dispatch relayed a description of Stutz, her vehicle and the license plate number to Indianapolis Police Officer Lona Douglas. When Officer Douglas arrived at the location, she observed Stutz in her vehicle as she "started to back out," stop, "pull[] back forward," stop again and then finally back out of the parking

---

[1] Ind. Code § 9-30-5-1.

space. (Tr. 12). Officer Douglas exited her police vehicle and approached Stutz's vehicle "as it was just sitting still outside of the parking spot . . . ." (Tr. 13). Officer Douglas made eye contact with Stutz and "waved" at her. (Tr. 13). As Officer Douglas advanced toward the vehicle, Stutz "started to pull forward," prompting Officer Douglas to return to her vehicle and activate her emergency lights. (Tr. 13). The two again made eye contact and as Officer Douglas walked toward Stutz's vehicle, Stutz "started to drive off," at which point Officer Douglas gestured to Stutz to stop her vehicle. (Tr. 13).

Officer Douglas approached the driver's side of Stutz's vehicle; Stutz, however, had not rolled down her window. Once Officer Douglas indicated that Stutz needed to roll down her window, Stutz "broke eye contact and began to fumble" with the window crank before rolling down the window "about an inch or so." (Tr. 14). Officer Douglas asked Stutz whether she had been drinking. Although Stutz denied drinking, Officer Douglas "immediately" smelled the odor of alcohol. (Tr. 14). Officer Douglas also observed that Stutz's eyes were "watery and bloodshot." (Tr. 15). Stutz then opened the car door and "pulled herself out" of the vehicle. (Tr. 15). After Officer Douglas again asked whether Stutz had been drinking, Stutz admitted to having had "a couple of drinks" but did not know exactly how much as "she had taken drinks directly out of the vodka bottle." (Tr. 15).

Given the inclement weather, Officer Douglas transported Stutz to the police department's roll call site in order to administer field sobriety tests. Officer Richard Eldridge, a "DUI enforcement officer," met Officer Douglas and Stutz at the site. (Tr.

3

35). He immediately "observed the signs of intoxication which w[ere] [the] odor of an alcoholic beverage emitting from [Stutz's] person and breath, slurred speech with a thick tongue, bloodshot eyes" and "unsteady balance." (Tr. 37). Officer Eldridge then administered several field sobriety tests, which Stutz failed. Officer Eldridge also administered a breath test with a B.A.C. Datamaster. The breath test revealed a blood-alcohol content of .20 percent.

On February 21, 2011, the State charged Stutz with Count 1, operating a vehicle while intoxicated in a manner that endangered a person, a class A misdemeanor; Count 2, operating a vehicle with a BAC of at least .15 percent, a class A misdemeanor; and Count 3, public intoxication, a class B misdemeanor. The trial court held a bench trial on September 28, 2011. The State conceded that it had not presented any evidence of endangerment, which was required to elevate Count 1 to a class A misdemeanor from a class C misdemeanor.

The trial court found Stutz guilty of, and entered a judgment of conviction for, Count 1, operating a vehicle while intoxicated as a class C misdemeanor; Count 2, operating a vehicle with a BAC of at least .15 percent, a Class A misdemeanor, and Count 3, public intoxication. The trial court then sentenced Stutz to concurrent sentences of zero days on Count 1, 365 days on Count 2 and 180 days on Count 3, with all but six days suspended.

<u>DECISION</u>

4

Stutz asserts that the trial court improperly entered a judgment of conviction for Count 2, operating a vehicle with a BAC of at least .15 percent where the trial court also entered a judgment of conviction for Count 1, operating a vehicle while intoxicated as a class C misdemeanor. Citing to *Sering v. State*, 488 N.E.2d 369 (Ind. Ct. App. 1986), she argues operating a vehicle with a BAC of at least .15 percent is a lesser-included offense of driving while intoxicated, requiring that the conviction on Count 2 be vacated.

In *Sering*, Sering appealed his convictions for operating a vehicle with a BAC of .10 percent and operating a vehicle while intoxicated. At that time, the former offense was a class C misdemeanor and the latter offense was a class A misdemeanor. In determining whether the former was a lesser-included offense of the latter, the *Sering* court held as follows:

> Having found identity of harm or risk of harm in the two subject alcohol related driving offenses, we must determine whether one risk is greater than the other. We conclude the legislature has determined the risk occasioned by the intoxicated operator is greater than the risk occasioned by the BAC of .10% operator. <u>This legislative intent is evidenced by the disparate classification of the two offenses; operating while intoxicated is a class A misdemeanor while operating with a BAC of .10% is a class C misdemeanor</u>. This disparity is explained by the fact an intoxicated driver has demonstrated an inability to operate a vehicle in a prudent manner.[2] Consequently, we can hypothesize the rationality in the difference in classification if we recognize some individuals may not be legally intoxicated, manifesting an impaired condition and loss of control to such an extent that others are endangered, with a BAC of .10%. If that is a valid assumption, and we believe it is, the greater harm or risk of harm occurs in the operation of a vehicle while intoxicated.

---

[2] Intoxicated means under the influence of alcohol so that "there is an impaired condition of thought and action and the loss of normal control of a person's faculties." I.C. § 9–13–2–86. "Proof of intoxication does not require proof of blood alcohol content; it is sufficient to show that the defendant was impaired." *Gatewood v. State*, 921 N.E.2d 45, 48 (Ind. Ct. App. 2010), *trans. denied*.

We conclude, therefore, that operating a vehicle with BAC of .10% is a lesser included offense of operating a vehicle while intoxicated because the former offense differs from the latter offense in that a less serious risk of harm to the public interest is required to establish its commission.

*Sering*, 488 N.E.2d at 376 (original footnotes omitted) (emphasis added).

Effective July 2000, the legislature amended Indiana Code section 9-30-5-1 to add the offense of operating a vehicle with a BAC of at least .15 percent, which it classified as a class A misdemeanor. *See* I.C. § 9-30-5-1(b). Furthermore, in 2001,

the Legislature substantially altered the [operating while intoxicated ("OWI")] statutes by redefining intoxication and establishing two separate misdemeanor classes for operating a vehicle while intoxicated. The effect of these changes was to remove the "endangerment" requirement from the general definition of intoxication and create the new offense of Class C misdemeanor OWI without an endangerment requirement.

*Vanderlinden v. State*, 918 N.E.2d 642, 645 (Ind. Ct. App. 2009) (internal citation omitted), *trans. denied*.

Thus, there are two statutes that criminalize drunken driving: Section 1 punishes operating a motor vehicle with a certain BAC and elevates the offense if the person's BAC exceeds a certain threshold; and Section 2 punishes operating a motor vehicle while simply "intoxicated"—without reference to the person's BAC—and elevates the offense if the manner in which the person operates the vehicle endangers a person.

*Simmons v. State*, 962 N.E.2d 86, 91-92 (Ind. Ct. App. 2011).

Given the amendments to the applicable statutes, we cannot say that *Sering* applies. Clearly, the classification of operating a vehicle with a BAC of at least .15 percent as a class A misdemeanor and that of driving while intoxicated as a class C misdemeanor is evidence that the legislature has determined that the former offense

6

constitutes a greater risk than the latter offense. We therefore conclude that class A misdemeanor operating a vehicle with a BAC of at least .15 percent is not a lesser included offense of class C misdemeanor operating while intoxicated. *Cf. Rouse v. State*, 525 N.E.2d 1278, 1281 (Ind. Ct. App. 1988) (finding that operating a motor vehicle with a BAC of at least .10 percent or more, causing death, could not be the lesser included offense of driving while intoxicated, causing death, because "both offenses are Class C felonies, thus, indicating a legislative determination that the offenses are of equal harm or risk of harm"), *trans. denied*. We therefore affirm the trial court's entry of a judgment of conviction for Count 2, operating a vehicle with a BAC of at least .15 percent, a class A misdemeanor. We, however, remand with instructions to the trial court to vacate Stutz's conviction for operating while intoxicated as a Class C misdemeanor, as it should be merged with the conviction for operating a vehicle with a BAC of at least .15 percent; furthermore, the abstract of judgment shall be amended accordingly.

Affirmed and remanded with instructions.

RILEY, J., and NAJAM, J., concur.